**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **AMERICAN PLASTICS TECHNOLOGIES, INC., and RAO MURUKURTHY,** ) ) | |
| ) | |
| **Plaintiffs/Counter-Defendants,** ) | |
| ) | |
| **v.** ) | **No. 10 C 6832** |
| ) | |
| **DYMOND PHARMCARE INDUSTRIES,** ) | **Magistrate Judge Finnegan** |
| **LTD., and OBONG BASSEY INUAEYEN,** ) | |
| ) | |
| **Defendants/Counter-Plaintiffs.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs/Counter-Defendants American Plastics Technologies, Inc. and Rao Murukurthy ("Murukurthy") (collectively "Plaintiffs"), and Defendants/Counter-Plaintiffs Dymond Pharmcare Industries, Ltd. ("Dymond") and Obong Bassey Inuaeyen ("Bassey") (collectively "Defendants") were engaged in a lawsuit before this Court (filed by Plaintiffs) and a lawsuit in Nigeria (filed by Defendants) over a contract dispute. With the assistance of Magistrate Judge Sidney I. Schenkier, they reached and signed a global settlement agreement in August 2013. Under that agreement, Plaintiff was to pay funds into an escrow account held by the Clerk of the U.S. Court. Then the parties were to take the necessary steps to dismiss the lawsuits both here and in Nigeria with prejudice. Upon dismissal of the lawsuits, Defendants were permitted to make a motion to this Court for an order directing that the funds held in escrow be paid to them. (Doc. 111, at 5-11).

Remarkably, the parties still have not put this matter to rest. Shortly after the settlement agreement was signed, Defendants attempted to reopen the settlement

negotiations, and Plaintiffs had to file a motion for an injunction to enforce the agreement. This Court granted Plaintiffs' motion, and on February 10, 2014, issued an Injunction Order to enforce the settlement terms. According to Plaintiffs, Defendants still did not take the necessary steps to dismiss the Nigerian lawsuit, so they filed a motion on June 4, 2014 asking the Court to enter an order finding Defendants in civil contempt for failing to make reasonable and diligent efforts to comply with the Injunction Order. (Doc. 120). Plaintiffs also sought their fees and costs.

It took another five months before the Nigerian lawsuit was dismissed on November 10, 2014. Defendants deny that this was their fault and blame their former attorney, Plaintiffs and others for the delay. Since the parties could not reach an agreed resolution of Plaintiffs' request for fees and costs in connection with the contempt motion, the Court allowed briefing to proceed and held a hearing. (Doc. 185). In support of the motion, Plaintiffs relied in part on certain communications between Defendants and their former attorney, Ebere N. Ekechukwu. This led Defendants to file a Motion to Strike Privileged Exhibits (Doc. 173) that is also before the Court.

For the reasons discussed below, the motion of Defendants/Counter-Plaintiffs to strike privileged exhibits (Doc. 173) is denied. The motion of Plaintiffs/Counter-Defendants for an order finding Defendants/Counter-Plaintiffs in civil contempt (Doc. 120) is granted in part and denied in part.

## BACKGROUND

**A.     Proceedings Leading to the February 10, 2014 Injunction Order**

Plaintiff APT is an Illinois corporation and Murukurthy is the President of APT. (Doc. 50 ¶¶ 3-4). Defendant Dymond is a Nigerian limited liability company and Bassey

is the head of Dymond.  (Doc. 40 ¶¶ 3-4).  On or about May 1, 2008, APT and Dymond entered into a contract for APT to, among other things, manufacture, supply and install certain equipment to be used for the production of intravenous solution ("IV") bottles for Dymond, and to operate the production line for the IV bottles.  (*Id.* at ¶ 7).

On October 25, 2010, Plaintiffs filed suit in this Court against Defendants, alleging that Dymond breached the contract with APT and that Defendants defamed Plaintiffs (the "U.S. Case").  (Doc. 1; Doc. 36).  Defendants denied the allegations and filed a counterclaim in the U.S. Case, alleging that APT breached the contract and that Plaintiffs defrauded Defendants.  (Doc. 40).  On January 21, 2011, Dymond filed suit against APT (and others) regarding the same dispute before the Federal High Court, in the Lagos Judicial Division, Holden at Ikoyi, Lagos, Nigeria (the "Nigerian Court"), in a case captioned as "Between Dymond Pharmcare Industries, Limited, Plaintiff and American Plastics Technologies, Inc., RZB Finance, LLC and Zenith Bank PLC, Defendants," Suit No. FHC/L/97/11 (the "Nigeria Case").  (2/4/13 Nigerian Court record, attached to Bassey's 1/20/15 Supp. Decl.).

On February 2, 2012, the U.S. Case was referred to Magistrate Judge Schenkier to mediate settlement discussions between the parties.  (Doc. 83).  After many months of negotiations, the parties executed an agreement on or about August 22, 2013, requiring Plaintiffs to pay $112,500 to Defendants.  (Doc. 170 ¶ 1).  Pursuant to that agreement, on August 23, 2013, Judge Schenkier ordered the Clerk of the Court to accept the settlement payment on deposit in the Court's registry until such time as a further Order of Court is entered regarding disposition of the funds.  (Doc. 103).  According to the settlement agreement, within five days of Plaintiffs' payment of all

3

amounts due under the agreement, the "Parties will take all steps necessary" to dismiss the U.S. Case and Nigeria Case with prejudice, with each party to bear its own costs and attorney's fees. (Doc. 111, at 6). The settlement agreement also provided that, upon dismissal of both the U.S. Case and Nigeria Case pursuant to the motions described in the agreement, Dymond is entitled to make a motion in the U.S. Case for an order directing that the payments held in escrow be released to Dymond. (*Id.*). On August 26, 2013, Plaintiffs deposited the settlement funds with the Clerk of Court, (*id.* at 12), and the next day filed a motion to dismiss the U.S. Case with prejudice. (Doc. 105).

Relations between the parties deteriorated after this. Defendants felt that, in light of new facts that they learned after signing the settlement agreement, the deal was not a good one. (Doc. 112, at 2-3). On December 3, 2013, counsel for Defendants (then Ebere Ekechukwu) forwarded to Plaintiffs' counsel a written communication that she received from Bassey reflecting what she described as his "decision concerning this case." (Doc. 111, at 13). Mr. Bassey stated in the email that after considering the case, the advice of his attorneys, his collective and personal losses, and other factors, he would proceed with the settlement if APT "is willing to pay $2.5 million." He wrote that upon this payment, "we will withdraw all suits against all the parties with Prejudice." Otherwise, he wrote, "Dymond will proceed for trial if APT is not willing to renegotiate the financial terms of the agreement." In closing, he stated: "If APT is insisting on paying only $112,000, the settlement will not include the case in Nigeria." (*Id.*).

Not surprisingly, this communication caused Plaintiffs to file a motion for an injunction to require compliance with the settlement agreement. (Doc. 108; Doc. 109).

After reviewing the briefs and evidence submitted and holding a hearing, this Court granted Plaintiffs' motion and ordered the parties' counsel to confer on a proposed injunction order. (Doc. 115). The parties were also ordered to confer on Plaintiffs' request for attorney's fees and expenses stemming from the enforcement of the settlement agreement. (*Id.*).

Plaintiffs submitted a proposed order and Defendants agreed to its language, so this Court signed and issued that Injunction Order on February 10, 2014. (Doc. 117). The Injunction Order provides in pertinent part as follows:

2. Bassey shall cause Dymond to take, and Dymond shall take all steps necessary to cause the Terms of Settlement Between Dymond Pharmcare Industries, Limited and American Plastics Technologies, Inc., a copy of which is attached hereto as Exhibit A (the "Terms of Settlement"), to be fully execute, [sic] filed and accepted in the Nigeria Case, including but not limited to the following:

(a) Within fourteen (14) days from the date of this Injunction Order, Bassey shall sign and shall cause Dymond to sign, and Dymond shall sign the Terms of Settlement where it provides for their signature. Within said fourteen (14) day period, Bassey and Dymond shall cause their counsel in the Nigeria Case to sign the Terms of Settlement where it provides for that signature. Finally, within the same fourteen (14) day period, Bassey and Dymond shall deliver the original, signed Terms of Settlement to plaintiffs' counsel in this case (i.e., the one pending in the United States District Court for the Northern District of Illinois).

(b) Within fourteen (14) days from the date of this Injunction Order, Bassey shall cause Dymond to file, and Dymond shall file a pleading in the Nigeria Case that withdraws the currently pending Motion on Notice for Discontinuance (filed in or around July 2013 in the Nigeria Case), a copy of which is attached hereto as Exhibit B, and shall promptly take such other action as is necessary to withdraw the Motion on Notice for Discontinuance.

(c) Bassey shall cause Dymond to not take any action, and Dymond shall not take any action to prevent APT from filing the Terms of Settlement in the Nigeria Case and/or obtaining a judgment in the Nigeria Case pursuant to the Terms of Settlement. Bassey shall cause Dymond, and Dymond shall take all steps necessary to ensure that a judgment is

entered pursuant to the Terms of Settlement once APT's counsel in the Nigeria Case files it in that case.

(Doc. 117 ¶ 2).  This Court also awarded Plaintiffs $5,005.00 against Defendants as reasonable fees incurred in seeking the Injunction Order, to be paid from the funds held in escrow by the Clerk of the Court for this matter.  (Doc. 118).  The rest of the settlement funds, approximately $107,495, remain in escrow.[1]

## B.    Events in Nigerian Court From February 2014 Through April 7, 2014

On Thursday, February 20, 2014, Plaintiffs' U.S. counsel, Bradley Block, emailed Defendants' then-U.S. counsel, Ebere Ekechukwu, to remind Plaintiffs that Monday, February 24, 2014 was the upcoming deadline to comply with certain terms of the Injunction Order.  (Doc. 120-1, at 1).  Block asked about the status of, among other things, the signing of the Nigerian settlement documents ("Terms of Settlement") referenced in the Injunction Order which, as stated above, were required to be signed (and had spaces for signatures) by Defendants and their Nigerian counsel.  (*Id*.).

On the morning of Friday, February 21, 2014, Ekechukwu responded to Block's email.  She wrote that Bassey had signed the Terms of Settlement, but "his Nigerian lawyers have refused to sign[,] stating that they were not part of the agreement."  (Doc. 120-1, at 1).  The parties continued emailing and Ekechukwu eventually wrote to Block that "I have communication [sic] between him [Bassey] and his Nigerian lawyers instructing them to comply with the injunction order by the deadline and their response that [sic] because they were not part of negotiating the agreement, they will not sign it."

---

[1]    Defendants state that the final form of the Injunction Order was different than previous proposed orders and the original settlement papers because the final proposed order required, for the first time, that they act within 14 days.  (Doc. 139, at 8).  But they do not argue that they objected to the final language in the Injunction Order, or that the Injunction Order was improperly granted.

(*Id.* at 7). She also explained that attempting to engage a new lawyer would cause a delay. (*Id.*). In another email later that day, Ekechukwu wrote that Bassey "has consulted with some other senior attorney in Nigeria who advised him that his Nigerian lawyer's signature is not required for the Terms of Settlement to be filed with the court and entered as an order/judgment of the court as long as the other party also signs." (Doc. 120-1, at 2). Based on Ekechukwu's representations, Plaintiffs agreed that the parties could try and file the Terms of Settlement in the Nigeria Case without participation from Defendants' Nigerian counsel. (Doc. 120-3 ¶ 3).

Meanwhile, APT's Nigerian counsel was also "uncooperative" so Plaintiffs sought new Nigerian counsel to represent them in the Nigeria Case. (Doc. 120-5). Plaintiffs engaged Anuoluwapo Fasoranti, (Doc. 120-2 ¶ 2), and on March 4, 2014, Fasoranti filed a motion for leave to change APT's counsel in the Nigeria Case from its former Nigerian counsel to her. (Doc. 155-2, at 1-2). The motion was supported by an affidavit stating that Fasoranti had been briefed by APT's prior counsel to take over the matter, and by a letter from Murukurthy stating that Fasoranti was authorized to represent APT in the Nigeria Case. (*Id.* at 3-5). These documents were served on Plaintiffs' former Nigerian counsel, Defendants' Nigerian counsel (who was reportedly refusing to sign the Terms of Settlement), and the other parties in the Nigeria Case. (*Id.* at 6-7). Fasoranti then prepared a new version of the Terms of Settlement that contained only spaces for Dymond and APT's signatures, and not for any attorney signatures. (Doc. 139-1 ¶ 5). On April 1, 2014, Bassey on behalf of Dymond, and Murukurthy on behalf of APT, signed the new version of the Terms of Settlement. (Doc. 139-3, at 3-5).

On April 2, 2014, Fasoranti filed the signed Terms of Settlement in Nigerian Court and appeared on APT's behalf to advocate for entry of the Terms of Settlement in the Nigeria Case, but nobody appeared for Dymond. (Doc. 120-2 ¶ 4; Doc. 139-3, at 3-5). As a result of the fact that nobody appeared for Dymond, the Nigerian Court did not enter the Terms of Settlement, and continued the hearing to April 7, 2014. (Doc. 120-2 ¶ 4-5; Doc. 139-1 ¶ 6; *see also* 4/2/14 Nigerian Court record, attached to Bassey's 1/20/15 Supp. Decl.). On April 4, 2014, Block emailed Ekechukwu to find out "who is going to court on Monday [April 7th] in Nigeria" to appear for Dymond. (Doc. 120-4, at 8). Ekechukwu replied that Bassey could not go, but that "he will send someone." (*Id.* at 7).

The parties dispute exactly what happened at the April 7, 2014 hearing, but agree that (a) a non-attorney, Blessing Augustus, appeared for Dymond; (b) an associate of Fasoranti, Oluwafemi Ojo, appeared for APT; and (c) the Nigerian Court still would not enter the Terms of Settlement, and set another hearing for April 11, 2014. (Doc. 120-2 ¶ 6, Doc. 120-5, at 4; Doc. 139-1 ¶¶ 7-9). The Nigerian Court records state that the judge "adjourned this matter for learned counsel to put their house in order. The manner and way of filing terms of settle [sic] is now part of 2009 [sic] Rules." (*See* 4/7/14 Nigerian Court record, attached to Bassey's 1/20/15 Supp. Decl.).

## C.     From the April 7, 2014 Hearing Through the May 9, 2014 Hearing

According to an April 9, 2014 email by Block to Ekechukwu, the "problem" with the April 7, 2014 hearing "was that the person [from Dymond] who went to court was not knowledgeable enough (and perhaps not senior enough) to demonstrate to the judge that Dymond Pharmcare had actually agreed to the Settlement Terms." (Doc. 120-4, at

3-4). Ekechukwu responded to Block's email the same day, clarifying that she understood from the Dymond representative at the hearing, Augustus, that the problem was the lack of counsel for Dymond. She wrote that Augustus "was a senior ranking officer of the company" who was "very knowledgeable and conversant with the lawsuit and the settlement agreement," but she "was never asked by the Judge" about the settlement. (Pl.'s Ex. 11 for 1/27/15 hearing). Instead, Augustus said that the judge asked her "where was their [Dymond's] lawyer and she said their attorney in Nigeria is no longer representing them and they do not have another lawyer. The Judge asked her to come back with a lawyer." (*Id.*). Block sent an April 10, 2014 email response to Ekechukwu agreeing that the judge "ordered that Dymond have a lawyer represent it at the next hearing on Friday." (Doc. 120-4, at 1). Block emphasized that "to get this done, Dymond must get its existing lawyers to appear in court or it must hire new lawyers." (*Id.*).

Bassey alleges in a declaration that, still under the impression that he had to appear in Nigerian Court at the next hearing date, he spoke with Fasoranti to discuss seeking a continuance due to his inability to attend on April 11th. (Doc. 139-1 ¶ 9). Fasoranti's billing invoice also contains notes concerning preparations for the April 11th hearing, which state that "Dymond still not ready to get a counsel [sic]. Bassey has opted to appear in court himself. Court informed of the decision and a long adjournment pleaded for." (Doc. 120-2, at 5). The Nigerian Court's records show that Fasoranti's associate, Ojo, appeared for APT on April 11th and requested a continuance to May 9, 2014, which was granted. (4/11/14 Nigerian Court record, attached to Bassey's 1/20/15 Supp. Decl.).

After the April 11th hearing, counsel and the parties engaged in numerous communications concerning whether the Nigerian Court required Dymond to have counsel appear on its behalf at the upcoming May 9, 2014 hearing. On April 23, 2014, Fasoranti emailed Ekechukwu (along with Block and Murukurthy), writing that "Justice Buba [of the Nigerian Court] specifically told your employee [Augustus] to inform Dymond to have a legal representative by the next date. I also told you this but you have insisted and you still insist that Mr. Bassey can represent himself." (Doc. 120-5). The next day, April 24, 2014, Ekechukwu, Fasoranti, and Block wrote emails back-and-forth (copying Bassey and Murukurthy), which included Ekechukwu's statements that Dymond "does not have the money to hire another lawyer." (*Id.* at 20). Ekechukwu also wrote that because Ojo, rather than Fasoranti, was in court on April 7th, Fasoranti "did not hear first hand [sic] what transpired when the case was called and why the Judge said Dymond should come back to court with a lawyer." (*Id.*). She also criticized Ojo for not explaining to the Nigerian Court why Augustus appeared for Dymond without any lawyer on April 7th, confirmed that "Dymond has not retained another lawyer" since parting ways with its Nigerian counsel, and asked for clarification regarding "what the case is up for on May 9, 2014." (*Id.* at 16, 18, 21).

Block responded to Ekechukwu's email on April 24, 2014, with a copy to Bassey, that "at the May 9 hearing, APT will seek (once again) to have the Nigerian Court accept and adopt the Settlement Terms[.]" (*Id.* at 15). Block further wrote that "the Nigerian Court directed Dymond Pharmcare to have counsel attend the May 9 hearing," and that "APT needs Dymond Pharmcare's counsel to unequivocally confirm that the Settlement Terms is a document that Dymond Pharmcare has signed and that Dymond Pharmcare

agrees that the Settlement Terms should be accepted and adopted by the Nigerian Court." (*Id.*). Block also warned that "if the Nigerian Court will not adopt the Settlement Terms because Dymond Pharmcare refuses to retain a lawyer to appear for the May 9 hearing, APT and Dr. Rao [Murukurthy] will view Dymond Pharmcare's refusal to have a lawyer appear as a violation of the injunction entered by the U.S. District Court." (*Id.*).

On April 25, 2014, Bassey emailed Ekechukwu to discuss the issue of hiring an attorney for the May 9, 2014 hearing.[2] (Doc. 147-8; Pl. Ex. 29 for 1/27/15 hearing). He wrote that his former Nigerian counsel "believed some of the terms in the [settlement] agreement did not make legal sense" and "subsequently withdrew from the case when Dymond was forced by a US court ruling to continue with the settlement agreement." (*Id.*). He also wrote that prior to the April 7th hearing, "Ms. Anu [Fasoranti] and Mr. Block directed us to appear in court to authenticate my signature before the court and that a legal representation [sic] was not necessary[.]" (*Id.*). Bassey also complained that he had now "cancelled a prior engagement, at serious price, to attend the court hearing on May 9th," and if the matter was not resolved on that day "Dymond will cease to take further action in this regard." (*Id.*). He concluded by writing that "Dymond will not hire any other lawyer to represent it in this case." (*Id.*).

On April 29, 2014, Bassey emailed Fasoranti, copying Ekechukwu and Block, stating that Fasoranti told him by phone he could attend the May 9, 2014 court hearing without an attorney. (Doc. 147-7, at 3-4; Pl. Ex. 28 for 1/27/15 hearing (subject of

---

[2] This April 25, 2014 email is one of the exhibits Defendants argue should be stricken from the record because it is a communication covered by the attorney-client privilege. As explained below, the Court finds that the privilege has been waived for this communication, as well as for the emails discussed later in this opinion sent between Bassey and Ekechukwu on April 29, 2014, and May 9, 19, 20, and 21, 2014. (Pl. Exs. 24, 25, 26 and 28 for 1/27/15 hearing).

privilege claim)). Fasoranti disagreed by reply email later that day, writing that the Nigerian Court ordered Bassey "to come with your lawyer" and she advised he get a lawyer, adding "I am not in a position to advise you. You are free to disobey the Court's order." (*Id.* at 3). Bassey then sent an email that day only to Ekechukwu, writing that "Dymond will do everything to ensure the success of the court process but hire a lawyer for this purpose," and that Plaintiffs could pay for a lawyer for Dymond "or accept the situation as it is, since we are no longer interested in the case." (*Id.* at 2). Ekechukwu sent a response email to Bassey that day, explaining that she had consulted with another attorney about the reasons "why the Judge will want you to come to court with a lawyer[,]" which included to prevent a fraudulent dismissal. (*Id.* at 1). She then wrote that Bassey had two options: "1. Hire a lawyer for the day and have the lawyer file a motion for change of attorneys and to adopt the Terms of Settlement – so that this can be concluded on May 9, 2014; or 2. Go to Court and hope that the Judge will be reasonable and listen to you as to why you did not come with a lawyer or hire another lawyer." (*Id.*).

On May 2, 2014, after having the foregoing email exchange with Ekechukwu, Bassey replied to Fasoranti's April 29th email, stating that "Dymond is not in a position to hire another lawyer for this purpose" and he would be in court himself on May 9th. (Doc. 147-10, at 2). Bassey attended the May 9, 2014 hearing without an attorney, and was "told by the Nigerian judge that Dymond was required to have an attorney represent it at the next hearing, which was set on May 28, 2014." (Doc. 139-1, Bassey 8/7/14 Decl., ¶ 11).

**D.     From the May 9, 2014 Hearing to the May 28, 2014 Hearing**

On the day of the May 9, 2014 hearing in the Nigerian Court, Fasoranti emailed Block, Murukurthy, Bassey and Ekechukwu summarizing what happened at the hearing. (Doc. 147-11, at 3; Pl. Ex. 24 for 1/27/15 hearing (subject of privilege claim)).   She wrote that Bassey was ordered to inform his prior Nigerian counsel to withdraw their appearance, and the judge also ordered that counsel sign the Terms of Settlement. (*Id.*).   Later that day, Bassey emailed Ekechukwu, writing that he spoke with his former Nigerian counsel "but they are still not ready to appear in court on an agreement they were not a party to."  (*Id.* at 2).   He further wrote that because Dymond's business was "ruined" due to the transaction with APT, Dymond was "not in any financial position to engage another lawyer for this case" but that "APT is welcomed [sic] to engage a lawyer to represent Dymond."  (*Id.*).   Bassey concluded by writing that "[m]y appearance in court on the 28th will be my last effort in this regard."  (*Id.*).

Ekechukwu responded to Bassey a few hours later on May 9th, stating that the settlement agreement in the U.S. Case "requires that you dismiss the Nigerian Case against APT."  (*Id.* at 1).   She advised that Dymond should "get a lawyer to finish this for you since the rules require that you be represented and the Judge today has said the same thing."  (*Id.*).   She stated that it would not necessarily require "an expensive lawyer since what he/she is going to do is to sign as your lawyer, just like Ms. Anuoluwapo [Fasoranti] signed for APT."  (*Id.*).   She also warned Bassey that if he failed to cooperate, Defendants risked that Plaintiffs would file a motion for a rule to show cause in the U.S. Case.  (*Id.*).

Fasoranti alleges that on or about May 16, 2014, she spoke with Bassey and he told her his former Nigerian lawyers "would not appear or cooperate with him because he had not paid approximately $12,000 of their bills[.]" (Doc. 120-2 ¶ 10). Fasoranti also alleges that Bassey said he had recently spoken with a potential new Nigerian lawyer, F. Ekogiawe Ehigiator. (*Id.*). Fasoranti further alleges that Bassey told her to have APT pay Ehigiator's $4,000 fee to appear on behalf of Dymond in the Nigerian Court. (*Id.*).

A few days later, on May 19, 2014, Block emailed Ekechukwu, stating that Bassey recently told Fasoranti that he does not have money to pay either his prior Nigerian lawyers or a new lawyer. (Doc. 147-12, at 3). As a result, Plaintiffs offered to join Defendants in a motion to this Court to allow for some of the funds being held in escrow for this case to be used to pay for a Nigerian lawyer for Defendants, subject to certain conditions. (*Id.*). These conditions included that Block and Fasoranti's fees and costs due to the delays "occasioned because Bassey did not pay his lawyers" would also be paid out of the funds held in escrow. (*Id.*).

Ekechukwu forwarded Block's email to Bassey that same day, and Bassey responded to Ekechukwu the next day, May 20, 2014. (*Id.* at 1-2). Bassey's email stated that his previous Nigerian lawyers "will not have anything to do with the case even if they are paid the money they are asking for," but they would not oppose the appearance of a new lawyer. (*Id.* at 2). Bassey also wrote that he "brought Attorney Ehigiator into the case" who had agreed to appear at the next May 28, 2014 hearing, and that Bassey had "paid some money to him with a promise that APT will pay the balance." (*Id.*). Bassey added that "APT is the one looking for this agreement to be

filed in a Nigerian court and not Dymond. So any cost thereon must be their responsibility." (*Id.*). The next day, Bassey emailed Ekechukwu again, writing that Defendants are not responsible for Fasoranti's fees and that "Dymond will withdraw from the agreement if Block press [sic] for payment of Anu's [Fasoranti] fees from the settlement account." (Doc. 147-13, at 2; Pl. Ex. 26 for 1/27/15 hearing (subject of privilege claim)).

On May 21, 2014, Block asked Ekechukwu for an update regarding whether Defendants wished to move forward with an agreed motion to release funds from the escrow account, and she responded that Bassey "has an attorney." (Doc. 120-9, at 2-3). Ekechukwu also responded to Bassey's email, advising him that "APT will not pay Mr. Ehigiator's fees" and that she had spoken with Ehigiator, who said he had not been paid and "because of that he cannot conclude the case on May 28, 2014." (Doc. 147-13, at 1; Pl. Ex. 26 for 1/27/15 hearing (subject of privilege claim)). She further advised that Bassey pay Ehigiator's fees or consider hiring an attorney friend of hers, who was willing to take the case for less money than Ehigiator was asking. (*Id.*). Ekechukwu also warned Bassey that Defendants would likely have to pay for Plaintiffs' attorney's fees for the upcoming hearing "if this case is continued again because you did not pay your lawyer to file the necessary papers to conclude the case that day." (*Id.*). On May 22, 2014, Block emailed Ekechukwu expressing concern that Ehigiator thought APT would pay his fees and noting that the fees were "obviously not APT's obligation." (Doc. 120-9, at 1-2).

Mr. Ehigiator appeared for Dymond at the May 28, 2014 hearing, but had not filed any change of appearance. (5/28/14 Nigerian Court record, attached to Bassey's

1/20/15 Supp. Decl., at 64-65).  Instead he asked "for one week to file our notice of change of counsel and term of settlement."  (*Id*.).  As a result, the hearing was continued to June 25, 2014.  (*Id*.).  Ehigiator alleges in a declaration that his fees were fully paid before he appeared in court on May 28th, although he does not explain why he had not filed any notice of change of counsel before that hearing.  (Ehigiator 12/8/14 Decl. ¶ 3).

## E.    Proceedings From June 2014 to November 2014

On June 4, 2014, Plaintiffs filed their motion for an order finding Defendants in civil contempt for failing to comply with the February 24, 2014 Injunction Order.  (Doc. 120).  They requested that the Court order that Defendants have counsel appear in the Nigerian Court to advocate for entry of the Terms of Settlement to purge the civil contempt.  They also requested the Court to order that the fees and costs of Plaintiffs' counsel in Nigeria be paid, and attached billing records reflecting court appearances on April 2, 7 and 9, 2014, and May 9 and 28, 2014.  (Doc. 120-2, at 5).  Finally, Plaintiffs requested that the Court award Plaintiffs' U.S. counsel, Block, his fees in trying to obtain entry of the Settlement Terms in Nigerian Court and for briefing and arguing the motion for a contempt order, and that these fees be paid from the funds held in escrow with the Clerk.  (Doc. 120 ¶¶ 15-17).  Shortly thereafter, on June 13, 2014, Ekechukwu filed a motion to withdraw as attorney for Defendants in this Court.  (Doc. 123).  Her motion was not granted until July 10, 2014.  (Doc. 128).

Meanwhile, in Nigerian Court, Fasoranti appeared for APT at the June 25, 2014 hearing, but nobody appeared for Dymond.  (6/25/14 Nigerian Court Record, attached to Bassey's 1/20/15 Supp. Decl., at 66-67).  The hearing was then continued to October

8, 2014 due to the Court's vacation schedule. (Pl. Ex. 31 for 1/27/15 hearing). Ehigiator alleges that he did not attend court on June 25th because Fasoranti told him the day before that the new Terms of Settlement still needed to be signed "and thus adjournment of the case was inevitable." (Ehigiator 12/8/14 Decl. ¶ 5). However, Ehigiator also admits that he still had not filed any notice of change of counsel, and does not explain why. (*Id.*).

On June 27, 2014, Block emailed Ekechukwu, stating that if Dymond's lawyer filed the change of counsel documents immediately, "the Court indicated that it will consider the application and the Settlement Terms before its vacation starts (July 15, 2014)." (Pl. Ex. 31 for 1/27/15 hearing). There is no evidence that any counsel for Dymond filed anything in Nigerian Court at this time. On July 17, 2014, after her motion to withdraw as counsel in the U.S. Case was granted, Ekechukwu filed a petition for attorney's fees in this Court. (Doc. 130). A few weeks later, on August 7, 2014, John Roberts, Matthew Garrett and Heather Harrison filed appearances for Dymond in this Court, (Docs. 133-36). Defendants filed a motion to strike Ekechukwu's fee petition and a memorandum in support (Docs. 136, 137), and Ekechukwu filed a response. (Doc. 147).[3]

---

[3]    In the publicly filed fee petition (Doc. 130), Ekechukwu divulged the settlement amount and attached one page of that agreement as an exhibit despite the parties' agreement that this was to be maintained as confidential. During a hearing on September 4, 2014, Ekechukwu acknowledged that the motion should have been filed under seal and agreed to withdraw it. Defendants then suggested that their motion to strike the fee petition (Docs. 136, 137) be denied as moot. After some discussion, the parties informed the Court that Ekechukwu would proceed with a motion seeking leave to intervene to assert her claim to attorney's fees, to which Defendants would respond, and these pleadings would be filed (at least initially) under seal. At the parties' suggestion, the original fee petition (Doc. 130), the motion to strike it and supporting memorandum (Docs. 136, 137), and Ekechukwu's response to the motion to strike (Doc. 147) were all removed from the record. (Doc. 148). After this, Ekechukwu filed a petition for leave to

New counsel for Defendants also filed a response to Plaintiffs' contempt motion. 139). In a declaration from Bassey dated August 7, 2014 and attached to that response brief, he alleged that Ehigiator was prepared to attend the October 8, 2014 hearing and have the Terms of Settlement entered by the Nigerian Court. (Doc. 139-1 ¶ 19). However, on August 20, 2014, new Nigerian counsel for Dymond, the law firm of Matthew W. Onah & Co. ("Onah"), filed a memorandum of appearance in the Nigeria Case. (Doc. 155-1).

On September 8, 2014, Block emailed Dymond's new U.S. Counsel, Garrett, advising that the appearance form filed by Onah in the Nigeria Case was not proper because it was "the type of appearance an attorney files at the beginning of the case; it is not the type of document filed to replace existing counsel." (Doc. 155-3). On September 20, 2014, after Garrett asked about Fasoranti's appearance documents, Block emailed him a copy, and wrote that Onah needed to file and serve the proper documents in time for the October 8, 2014 hearing. (Doc. 155-5, at 1). Nothing additional was filed by Defendants or Onah prior to the October 8, 2014 hearing.

Attorney Ademola A. Adewale of Onah's firm appeared for Dymond at the October 8, 2014 hearing in the Nigerian Court. (Pl. Ex. 33 for 1/27/15 hearing; Onah 12/8/14 Decl. ¶ 5). At the hearing, the Nigerian judge was concerned that Dymond was now represented by multiple lawyers from different law firms, and the court sought an affidavit confirming that Dymond's previous Nigerian counsel was no longer representing it and was being replaced. (Onah 12/8/14 Decl. ¶ 6.; *see also* Doc. 156 ¶

_____

intervene (Doc. 151), to which Defendants filed a sealed memorandum in opposition. (Doc. 164). Ekechukwu also filed a new petition for attorney's fees and supporting memorandum (under seal) (Docs. 149, 150), and later an amended petition for fees (under seal). (Doc. 169).

4).  As a result, the Nigeria Case was set for another hearing on October 29, 2014. (*Id.*).

On October 24, 2014, Onah filed a notice of change of counsel in the Nigerian Court "to establish that the attorneys from [his] office were the only attorneys then representing Dymond." (Onah 12/8/14 Decl. ¶ 7; *see also* 10/24/14 Notice, Pl. Ex. 6 for 1/27/15 hearing).  At the October 28, 2014 hearing, the Nigerian Court granted Onah's application to appear as new counsel for Dymond, but did not enter the Terms of Settlement because they were dated in April 2014, before Onah appeared for Dymond. (Pl. Ex. B for 1/27/15 hearing, Fasoranti's Direct Testimony ¶ 17).  Thus, a new hearing was set for November 10, 2014.  (*Id.*).  On October 31, 2014, the parties signed and dated new Terms of Settlement and filed them in Nigerian Court on November 4, 2014. (Pl. Ex. 34 for 1/27/15 hearing).  Based on the Terms of Settlement, on November 10, 2014, the Nigerian Court finally entered a consent judgment dismissing APT from the Nigeria Case.  (*Id.*).

## DISCUSSION

A.    **Defendants' Motion to Strike**

1.    **Attorney-Client Privileged Communications and Their Disclosure**

Before addressing Plaintiffs' contempt motion, the Court must address Defendants' motion to strike certain exhibits that Plaintiffs rely on for their motion. Defendants specifically seek to strike Plaintiffs' Exhibits 24, 25, 26, 28 and 29 submitted for a hearing before this Court on January 27, 2015, which contain email communications between Ekechukwu and Bassey.  (Doc. 173).  Defendants argue that

these emails are protected by the attorney-client privilege, and that Ekechukwu publicly disclosed the emails without their consent. (Doc. 174, at 3-5).

Ekechukwu disclosed the emails during an ongoing dispute between her and Defendants over her legal fees. As noted above, a week after this Court granted Ekechukwu's motion to withdraw as Defendants' counsel in the U.S. Case, she filed a petition for attorney's fees. (Doc. 130). The petition did not have any emails attached to it. Nevertheless, on August 7, 2014, Defendants filed a motion to strike the fee petition, arguing (in a publicly-filed brief) that Ekechukwu is not entitled to fees in part because "it was her former clients' reliance on her advice that caused the delay in the defendant/counter-plaintiff's ability to comply with this court's orders." (Doc. 137, at 11).

Defendants specifically argued that Ekechukwu erroneously advised Bassey that Dymond did not require counsel to represent it in the Nigeria Case at the April 11, 2014 hearing (which was eventually rescheduled to May 9, 2014). (Doc. 137, at 4-5). In their publicly-filed brief, Defendants quoted, and attached, emails Ekechukwu sent Bassey on April 10, 2014 stating "[y]ou do not have to hire a lawyer if you appear in court yourself" and "[a]pearing [sic] in Court tomorrow yourself will eliminate the issue of you hiring a new lawyer." (Doc. 137-3, at 3-4). Defendants also argued that Ekechukwu failed to bring the Nigeria Case and the U.S. Case to a final determination, including by securing a release of the settlement funds held in escrow, which was a prerequisite to her receiving fees under their fee agreement. (Doc. 137, at 7-9). Finally, Defendants publicly filed a declaration from Bassey dated August 7, 2014 in support of their response to Plaintiffs' contempt motion, stating "My former U.S. counsel, Ms. Ebere

Ekechukwu, instructed me repeatedly that I could appear on Dymond's behalf at the next [May 9, 2014] hearing instead of an attorney." (Doc. 139-1, Bassey Decl., ¶ 10).

Ekechukwu disputed Defendants' representations in her (publicly-filed) response brief to their motion to strike her fee petition, arguing that she advised Bassey to retain a lawyer to conclude the Nigeria Case and made efforts to help him do so. (Doc. 147, at 6-11). She attached but did not file under seal certain exhibits to her brief, namely, other emails between her and Bassey, including the emails Defendants now seek to strike. (Doc. 147-11 – Doc. 147-14). She argued that the emails Defendants disclosed show advice that she gave in early April, but she subsequently changed her advice and told Bassey to obtain an attorney for Dymond for the May 9, 2014 hearing (and beyond), as reflected in the additional emails attached to her response. (Doc. 147, at 8-11). Ekechukwu further asserted that the emails show that it was not her advice which caused Bassey to refrain from retaining a lawyer for the Nigeria Case. Rather, she argued the emails show that "from the onset" Bassey "did not wish to spend additional money on a lawyer's fee on this case since doing so will be helping APT to get out of the case quickly." (*Id.* at 11). Thus, Ekechukwu disputed Defendants' accusation that she is at fault in not bringing the U.S. Case and Nigeria Case to a final determination since, she argued, Bassey "is the reason the money has not been paid out to the Defendants because he has failed to dismiss the cases." (*Id.* at 14).

## 2. Waiver Analysis

Plaintiffs do not contest that the attorney-client privilege applied to the emails Ekechukwu disclosed, but argue that Defendants have waived the privilege over these emails. (Doc. 182). Plaintiffs first argue that Defendants waived the privilege regarding

their communications with Ekechukwu as to whether Dymond needed to retain counsel in the Nigeria Case by voluntarily disclosing the emails containing some of her advice on that subject. (*Id.* at 2-3). "Any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege." *Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989) (citing *United States v. Buljubasic*, 808 F.2d 1260, 1268 (7th Cir. 1987); 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2016 (1971)). *See also Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL 113107 ¶ 35 (2012) ("The basic, well-settled rule is that when a client discloses to a third-party a privileged communication, that particular communication is no longer privileged and is discoverable or admissible in litigation.").[4]

Defendants argue that they did not waive the privilege in their August 2014 filings because Plaintiffs' counsel already knew that Ekechukwu had told Bassey he could attend the May 9th hearing without counsel, so disclosing this "non-privileged" information again could not waive the related privileged communications. (Doc. 178, at 8-9). In support, Defendants cite the April 23, 2013 email of Plaintiffs' Nigerian lawyer, Fasoranti, stating that "you [Ekechukwu] have insisted and you still insist that Mr. Bassey can represent himself." (Doc. 120-5, at 6). But this email only supports an inference that Ekechukwu allegedly made some representation to Plaintiffs' counsel about whether Bassey could represent himself. It does not show any disclosure of the

---

[4] The parties do not address what law applies and both parties rely on cases applying Illinois law and the federal common law (with Plaintiffs citing cases applying law from other jurisdictions as well). Since the parties have not raised the choice-of-law issue or pointed to any conflict between Illinois and federal law on the matters at hand, the Court need not resolve this issue.

advice Ekechukwu gave Bassey; that information was first disclosed by Defendants in their August 7, 2014 filings. By voluntarily disclosing their communications with Ekechukwu in order to attack her fee petition, Defendants waived the privilege for those communications.

The parties also dispute the scope of the privilege waiver occasioned by Defendants' disclosures. Plaintiffs argue that Defendants' waiver encompasses all of the challenged emails because the waiver extends to all "communications regarding [Defendants'] retention of counsel in Nigeria to appear in the Nigeria Court." (Doc. 182, at 3). Defendants argue that any waiver here is limited to only communications regarding whether Dymond required counsel at the May 9, 2014 hearing. (Doc. 178, at 9-10). Since Exhibits 24, 26 and portions of Exhibit 25 contain privileged communications regarding whether Bassey should, could or would retain counsel for Dymond in the Nigerian Case for other hearings, Defendants argue the privilege is not waived for these communications. (*Id.*). In so arguing, Defendants implicitly concede that waiver *does* apply to the emails in Exhibits 28 and 29, and the only contested issue here is whether the waiver extends to the other emails in Exhibits 24, 26 and portions of 25.

Although Defendants only disclosed emails and information concerning Ekechukwu's advice for the May 9, 2014 hearing, they also argued that they relied on her advice and that she is therefore at fault for the consequences of that reliance. The attorney-client privilege is waived for an otherwise privileged communication when the litigant directly puts the attorney's advice at issue in the litigation. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 324 (N.D. Ill. 2008) (Illinois law). "The

advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 863 (3d Cir. 1994) (federal common law); *see also Dexia Credit Local v. Rogan*, 231 F.R.D. 268 (N.D. Ill. 2004) (Illinois law) (same).

Defendants here have done more than merely raise a defense. They have specifically described the advice given by their attorney and disclosed specific communications with that attorney in an attempt to (a) prove their lack of fault in any delay in complying with this Court's orders, (b) shift any blame to their attorney, and (c) dispute her right to fees. (*See* Doc. 139-1, Bassey Decl. in opposition to contempt motion, ¶ 10) ("My former U.S. counsel, Ms. Ebere Ekechukwu, instructed me repeatedly that I could appear on Dymond's behalf at the next [May 9, 2014] hearing instead of an attorney."). By doing so, they waived the privilege over not just the specific communications they have disclosed, but also on the broader topic of their reliance on Ekechukwu's advice regarding the retention of counsel in the Nigeria Case. The emails Ekechukwu disclosed related to that subject, and were used to dispute Defendants' affirmative allegations; namely, that Ekechukwu gave incompetent advice and they followed it. "When either party to the attorney-client relationship alleges a breach of duty by the other, the privilege is waived as to communications between the disputing parties." *Fischel & Kahn, Ltd. v. van Straaten Gallery, Inc.*, 301 Ill. App. 3d 336, 338-39, 703 N.E.2d 634, 636-37 (1st Dist. 1998), *rev'd in part on other grounds*, 189 Ill. 2d 579, 727 N.E.2d 240 (2000); *see also Scheurer Hosp. v. Lancaster Pollard & Co.*, No. 12-CV-11536, 2012 WL 5471135, at *5 (E.D. Mich. Nov. 9, 2012) (Michigan

and federal common law) (same). Defendants opened the door for Ekechukwu's disclosure of otherwise privileged communications to refute their allegations against her.

Defendants' arguments to the contrary are unavailing. On their advice of counsel defense they argue, without citing any precedent, that they have only waived the privilege if that defense is valid. (Doc. 178, at 9). They then refer the Court to cases undermining their own defense, holding that advice of counsel is not a valid defense to a charge of civil contempt. (*Id.*). Finally, they argue that if these cases are correct (they do not concede that they are), then their advice-of-counsel defense fails and they have not waived the privilege over their counsel's advice. (*Id.*). The Court does not find this unusual argument persuasive. Regardless of whether the Court finds the advice-of-counsel defense to be meritorious, Defendants raised that defense, disclosed privileged communications to opposing counsel in the process, and thereby waived the privilege.

Defendants also argue that Plaintiffs should be barred from using the emails in question because Ekechukwu violated the Illinois Rules of Professional Ethics by broadly disclosing the emails. (Doc. 174, at 4). They cite in support an Illinois ethics opinion which states that "a lawyer should not use information that was disclosed as the result of deceitful or illegal conduct or breach of trust by an agent of the opposing party." (*Id.*) (citing ISBA Advisory Opinion on Professional Conduct, Opinion No. 98-04 (Jan. 1999) (hereinafter, "ISBA Opinion")). From this they argue that although an attorney may disclose privileged communications in a controversy between the attorney and client, the manner in which Ekechukwu did so here violated the ethical rules. (Doc. 178, at 2). Specifically, they argue that the ethics rules required Ekechukwu to limit her disclosure, through a protective order or other means, to "the tribunal or other persons

having a need to know—which does **not** include Dymond's present opponent, APT." (*Id.*) (emphasis in original).

The Court takes no position on whether any counsel has committed ethical violations in this case, since this is immaterial to the admissibility of the emails at issue. *See United States v. Williams*, 698 F.3d 374, 382 (7th Cir. 2012) (even if a lawyer violated his ethical obligations by testifying to his client's communications, "it would not follow that his testimony was inadmissible, unless otherwise barred by the Federal Rules of Evidence . . ."); *see also* ISBA Opinion ("[T]he determination of what particular circumstances might result in a waiver of the privilege is a question of the law of evidence beyond the scope of this" opinion). Defendants raise no valid arguments against the emails' admissibility.

For all of these reasons, the Court denies Defendants' motion to strike privileged documents (Doc. 173), and will allow Plaintiffs to rely on the emails in support of their motion for an order finding Defendants in contempt of the Injunction Order.

## B.    Plaintiffs' Motion for Contempt Order

Turning to Plaintiffs' motion for an order finding Defendants in civil contempt (Doc. 120), this Court finds that one aspect of the motion and requested relief is now moot. Since the Nigerian Court entered a consent judgment dismissing APT from the Nigeria Case on November 10, 2014, there is no longer any need for this Court to order Defendants to take the actions identified by Plaintiffs in order to "purge" the contempt. (*Id.* at 8). But Plaintiffs still seek their attorney's fees and expenses incurred (in both the U.S. Case and the Nigeria Case) in having the Nigeria Case dismissed, and the fees and costs for bringing and arguing the contempt motion, on the grounds that those fees

and costs were incurred due to Defendants' contemptuous delay in complying with the February 10, 2014 Injunction Order. Defendants oppose the motion, asserting that there is no evidence to support a finding of contempt.

To prevail on a request for a civil contempt finding, the movant must establish by clear and convincing evidence that: (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *Id.* at 474. "A civil contempt order can . . . be intended to compensate a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *Ohr ex rel. Nat'l Labor Relations Bd. v. Latino Exp., Inc.,* 776 F.3d 469, 479 (7th Cir. 2015).

### 1.    From February 2014 Through the April 7, 2014 Hearing

Defendants do not contest that they violated the Injunction Order's requirement to have Bassey and Dymond's counsel sign the Terms of Settlement, and deliver that signed document to Block, by February 24, 2014. (Doc. 117 ¶ 2(a)). They argue, however, that it was impossible for them to comply with these terms since their Nigerian counsel at that time "would not cooperate because they had not been included in the negotiations of the Settlement Agreement, *i.e.*, a situation that the Defendants could not remedy[.]" (Doc. 139, at 3). Defendants further assert that they nevertheless made a reasonable effort to comply by attempting to sign and file the Terms of Settlement without counsel, a process which Plaintiffs agreed to until the Nigerian judge ordered Dymond to obtain counsel at the April 7, 2014 hearing. (*Id.* at 9-11).

Plaintiffs argue that, contrary to Defendants' representations, the reason Dymond's Nigerian counsel would not cooperate is because Defendants would not pay their fees.  (Doc. 120 ¶¶ 4, 8-9).  Had counsel been paid, Plaintiffs assert, they would have cooperated in having the Terms of Settlement entered.  (*Id.*).  As evidence for this position, Plaintiffs rely on the affidavit of their Nigerian lawyer, Fasoranti, stating that Bassey told her he owed his counsel $12,000 and they would not cooperate unless they were paid, and similar statements in Bassey's emails with Ekechukwu.  But Bassey more fully stated in the emails to Ekechukwu that Dymond's counsel did not cooperate because they had not been paid *and* because they would not "appear in court on an agreement they were not a party to."  (Doc. 147-11, at 3).  Bassey also stated that his pre-settlement Nigerian counsel would "not have anything to do with the case even if they are paid the money they are asking for[.]"  (Doc. 147-12, at 2).  Plaintiffs present no evidence to contradict these statements.  Thus, they have not established by clear and convincing evidence that if Defendants had paid their former counsel's fees, counsel would have signed the Terms of Settlement by February 24, 2014, making Defendants' failure to pay their former counsel unreasonable.

Plaintiffs also admit that when Ekechukwu discussed with Block the possibility of Dymond retaining a new lawyer to get the Terms of Settlement entered in February 2014, they agreed to attempt to move forward for two reasons.  One reason was that Plaintiffs believed Dymond's Nigerian counsel would not cooperate in the Nigeria Case solely due to their concerns about the settlement agreement, which is a contested issue.  But the other reason was that "Plaintiffs wanted to avoid delay."  (Doc. 120 ¶ 5).  In order to accomplish that goal, Plaintiffs themselves co-signed and filed Terms of

Settlement without counsel's signatures because they thought doing so would still achieve dismissal of APT from the Nigeria Case. Therefore, Plaintiffs' own conduct here is evidence against finding that Defendants failed to make a reasonable and diligent effort to comply with the Injunction Order through the April 7, 2014 hearing. Consequently, Defendants were not in contempt of the Injunction Order at or before the April 7, 2014 hearing.

### 2. After April 7, 2014 Hearing Through the May 9, 2014 Hearing

At the April 7, 2014 hearing, the Nigerian judge ordered that Dymond was required to have counsel represent it in the Nigeria Case. Plaintiffs argue that Defendants' ongoing failure to have counsel appear on their behalf (which was not done until October 24, 2012) violated the Injunction Order. (Doc. 146, at 2-3). Specifically, Plaintiffs argue that Defendants violated paragraph 2(c) of the Injunction Order "which creates an affirmative duty to 'take all steps necessary' to fully execute and file the Terms of Settlement, and to cause the Nigerian Court to adopt them." (*Id.* at 3). Plaintiffs further argue that Defendants' conduct constituted contempt because they have "no excuse" for failing to have counsel appear in a timely manner. (*Id.*).

Defendants took no steps to obtain representation for the Nigeria Case between the April 7th hearing and the next May 9th hearing despite being ordered to do so, which is a significant violation of the Injunction Order's requirement that Bassey cause Dymond to "take all steps necessary to ensure that a judgment is entered" in that case. (Doc. 117 ¶2(c)). But in their brief and at the hearing, Defendants argued that their failure to hire counsel was not contemptuous, because it was unintentional and due to confusion that was at least partially created by erroneous advice from their then-U.S.

counsel, Ekechukwu. (Doc. 139, at 11). This argument fails for two reasons. First, as Defendants admitted in their arguments on the motion to strike, advice of counsel is not a valid defense to civil contempt because "scienter is not required in civil-contempt proceedings." *S.E.C. v. McNamee*, 481 F.3d 451, 456 (7th Cir. 2007).

Second, the evidence does not support either Defendants' argument that Bassey was confused about whether the Nigerian judge ordered (on April 7th) that Dymond needed counsel, or their argument that Ekechukwu advised them they did not need counsel. Rather, the numerous email communications between the April 7th and May 9th hearings show that Bassey was repeatedly told, including by Ekechukwu, that Dymond required an attorney for the May 9th hearing. On April 29, 2014, after Bassey told her he would do everything but hire a lawyer for the Nigerian Case, Ekechukwu still advised him to "[h]ire a lawyer for the day" and expressly warned Bassey that failing to do so would be to gamble on a "hope that the Judge will be reasonable." (Doc. 147-7, at 1). Nevertheless, because he had no interest in spending the funds to hire an attorney in addition to the costs he had already incurred, Bassey took the risk of appearing for Dymond in the Nigeria Case without counsel. Plaintiffs have shown that Defendants made no reasonable or diligent effort to comply with the Injunction Order from April 7th through the May 9, 2014 hearing, causing Plaintiffs to incur unnecessary costs and fees here. Consequently, Defendants were in contempt of the Injunction Order after the April 7, 2014 hearing through the May 9, 2014 hearing.

### 3. After May 9, 2014 Hearing Through October 8, 2014

Defendants concede that Bassey was present in the Nigerian Court on May 9, 2014 when the judge ordered that Dymond must have counsel appear in the Nigeria

Case. (Doc. 139, at 11). Therefore, Defendants could have no further misunderstandings regarding what they were required to do to comply with the Injunction Order. Defendants argue, however, that from the May 9, 2014 hearing until the time Attorney Onah properly appeared for Dymond in the Nigeria Case, they were not in contempt of the Injunction Order because they attempted to have counsel appear on Dymond's behalf in that case. (*Id.* at 11-12).

For the period from the May 9, 2014 hearing through the June 25, 2014 hearing, Defendants rely on their retention of Attorney Ehigiator as evidence that they attempted to have counsel appear in the Nigeria Case on Dymond's behalf. (*Id.*). The fact that Ehigiator never filed any appearance in the Nigerian Case, however, means that they were still in violation of the Injunction Order during this time. Moreover, Defendants' retention of Ehigiator is not sufficient to show that they reasonably and diligently attempted to comply with the Injunction Order. Up until at least May 21, 2014, Defendants had not paid Ehigiator enough fees to file his appearance for the May 28, 2014 hearing based on Bassey's resistance to paying fees in order to have APT dismissed from the Nigeria Case. This finding is supported by Bassey's May 20, 2014 email to Ekechukwu stating that he "promise[d] [Ehigiator] that APT will pay the balance" of fees due to Ehigiator to participate in the Nigeria Case, (Doc. 147-12, at 2), and Ekechukwu's May 21, 2014 email to Bassey explaining that APT would not pay the fees and Ehigiator could not conclude the case on May 28, 2014 without being paid. (Doc. 147-13, at 1). It is also supported by Defendants declining Plaintiffs' May 19, 2014 offer to have the fees paid out of the escrow funds held by the Clerk of the Court

for this matter because Bassey thought those costs were APT's "responsibility." (Doc. 147-12, at 3).

Defendants argue that the Nigeria Case would not have been dismissed even if they paid their counsel's fees well in advance of the May 28, 2014 or June 25, 2014 hearings because newly-executed Terms of Settlement would still have needed to be filed by Plaintiffs and Defendants. (Doc. 139, at 13). But although dismissal could not have been achieved at this point due in some part to Plaintiffs' conduct, that fact neither prevented nor absolved Defendants from working diligently on their duty to enter an appearance of counsel. Defendants give no explanation why nothing was done to have Ehigiator file his appearance in the Nigeria Case in time for the May 28, 2014 hearing or the June 25, 2014 hearing. Thus, their continuing failure to take any reasonable or diligent efforts to comply with the Injunction Order by the June 25, 2014 hearing was in continued contempt of that order.

During the hearing, Defendants argued that their engagement of the Onah firm and that firm's filing of appearance documents on August 20, 2014 in the Nigeria Case showed an attempt to comply with the Injunction Order by then, even though those forms were not accepted by the Nigerian Court. This Court agrees with Plaintiffs that Defendants still were in violation of the Injunction Order through the October 8, 2014 hearing. Prior to this they did not make reasonable or diligent efforts at compliance. Contrary to Defendants' arguments, the Onah firm's filing of the wrong appearance documents on August 20, 2014 was not a reasonable mistake. Defendants should have known that since the Onah firm was replacing counsel who had already appeared, they

could not file an initial appearance document, (Doc. 155-1), but should have filed forms for change of counsel.  (Pl. Ex. 6 for 1/27/15 hearing).

As Plaintiffs argued, even putting aside that it is unreasonable for Defendants' Nigerian counsel to not know about the Nigerian Court's rules regarding appearances, Block sent a September 8, 2014 email to Defendants' then-U.S. counsel explaining that the appearance forms were incorrect.  (Doc. 155-3).  Defense counsel then asked for an explanation, and it was provided along with a sample of the correct form.  (Doc. 155-5, at 1).  Yet Onah's firm did nothing until after the October 8, 2014 hearing, and during that hearing the Nigerian judge informed them of the same information Plaintiffs' counsel previously provided—that they needed to show they were substituting counsel and that their client authorized such substitution, as was done with Fasoranti's motion for leave to change counsel.  (Doc. 156 ¶ 4).  Thus, Defendants' continued lack of reasonable and diligent efforts at compliance caused Plaintiffs to wrongly incur fees and costs through the October 8, 2014 hearing in the Nigeria Case.

Finally, the Court also agrees with Plaintiffs' argument that their contempt motion was required to induce Defendants' compliance with the Injunction Order.  (Doc. 146, at 1).  As Plaintiffs argued in the hearing on this matter, Defendants were less diligent in having counsel appear in the Nigeria Case before Plaintiffs filed their contempt motion on June 4, 2014.  The matter had dragged on for many months with little sign of resolution until after Plaintiffs filed their contempt motion, and shortly thereafter Defendants obtained new Nigerian counsel who actually filed an appearance form in the Nigeria Case.  Although that form was initially incorrect, Defendants corrected the forms in a relatively shorter amount of time than they had done before any contempt motion

was pending. Consequently, Defendants were in contempt of the Injunction Order after the May 9, 2014 hearing through the October 8, 2014 hearing. After that hearing, Plaintiffs concede that Defendants were no longer in contempt of the Injunction Order, so this Court finds that Defendants were not in contempt from October 9, 2014 to the date the Nigerian Court entered the consent judgment dismissing APT from the Nigeria Case on November 10, 2014.

For all of these reasons, the Court grants in part and denies in part Plaintiffs' Motion for Order Finding Defendants in Civil Contempt (Doc. 120), finding that Defendants were in contempt of this Court's Injunction Order from April 7, 2014 through October 8, 2014, but were not in contempt between February, 2014 and April 7, 2014, or after October 8, 2014. Defendants are ordered to pay the reasonable fees and costs Plaintiffs incurred in bringing and prosecuting the contempt motion, and those reasonable fees and costs related to enforcing the terms of the Injunction Order to the extent this Court found those fees and costs were incurred due to Defendants' contempt. The Court will order that these fees and costs be paid from the funds held in escrow by the Clerk of the Court for this matter.

## CONCLUSION

Defendants/Counter-Plaintiffs' Motion to Strike Privileged Exhibits [Doc. 173] is denied in its entirety. Plaintiff's Motion for Order Finding Defendants in Civil Contempt [Doc. 120] is granted in part and denied in part. Plaintiffs are given until November 6, 2015 to file a motion for entry of a proposed order awarding reasonable attorney's fees and costs to be paid from the escrow held by the Clerk of the Court.

ENTER:

Dated: October 2, 2015

_____
SHEILA FINNEGAN
United States Magistrate Judge